IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL A HUNT, | No. 2:08-cv-00181-SPK |
| Plaintiff, | |
| v. | |
| R. RIOS, D. FIELDS, | |
| Defendants. | |

ORDER (1) DENYING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT, AND (2) DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL COMPLAINT

Two motions are pending before the Court: Defendants' Motion to Dismiss First Amended Complaint [doc. 21], and Plaintiff's Motion for Leave to File a Supplemental Complaint [doc. 25]. For the reasons set forth, Defendants' Motion to Dismiss is DENIED, and Plaintiff's Motion for Leave to File a Supplemental Complaint is also DENIED. The action shall be allowed to proceed on the existing First Amended Complaint [doc. 12].

I. Motion to Dismiss

For purposes of the motion to dismiss, the Court assumes as true the well-

1

pleaded factual allegations in the First Amended Complaint and determines whether the content of the allegations "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ---U.S. ----, 129 S. Ct. 1937, 1949 (2009).  Given those assumptions, the First Amended Complaint alleges enough factual detail and asserts a valid claim under 42 U.S.C. § 1983 for retaliation against Plaintiff in violation of his First Amendment rights.  *See Rhodes v. Robinson*, 408 F.3d 559 (9th Cir. 2005); *Brodheim v. Cry*, No. 07-17081, ___ F.3d ___, 2009 WL 3448411 (9th Cir. Oct. 28, 2009) (citing *Rhodes*).  These cases reiterated well-established federal law:

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes*, 408 F.3d at 567-68 (footnote omitted).

Plaintiff alleges that sometime between January 27, 2007 and April 17, 2007 Rios and/or Fields placed evidence of gang membership or gang activity into his central file while he was in "B-facility."  He alleges this was done because he had filed a past grievance and a past civil rights suit (Hunt v. McKay, Civ. No. 04-0435 EJG (E.D. Cal.)) regarding his prior suspicion of being a gang member.  He alleges that in 2005 or 2006 he had been found to be an "unaffiliated" prisoner (i.e., not associated with a gang).  Although a past finding of "non-affiliation" does not mean there was not some *subsequent* evidence of gang-association, Plaintiff also alleges that the 2007 evidence was false and was placed in retaliation for filing past grievances ("protected conduct").  As a result, he alleges a reasonable person would be "chilled" in exercising such protected conduct, and that he will suffer (or

has suffered) by being "locked down" (or facing possible lockdown) by being classified as gang-affiliated. He essentially alleges that submitting false evidence of gang-affiliation does not advance a legitimate correctional goal.

Plaintiff has alleged "adverse action" (placement of false reports of gang-affiliation) "because of" "protected activity" (grievances and a civil rights suit). He alleges he was (or will be subject to) lockdowns and that protected speech was "chilled" (damages or "chilling" of such protected activity). He plausibly alleges an absence of legitimate correctional goals. These allegations are enough to state a claim for retaliation.

Defendants argue that there are no allegations of "chilling" or damages necessary to state a First Amendment retaliation claim. They argue that his speech has not been chilled because he had not been prevented from filing future grievances. They argue that he has not alleged actual damages. These arguments, however, are foreclosed at least at the pleading stage by *Rhodes* and the recently-published opinion in *Brodheim*. *Rhodes* emphasized that "chilling" is an objective standard. 408 F.3d at 568-69. Even if Plaintiff Hunt would not be deterred, the question is whether a reasonable prisoner might be "chilled." *Brodheim*, 2009 WL 3448411, at *8 ("a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'") (citing *Rhodes*, 408 F.3d at 568-69). "To hold otherwise would 'allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity.'" *Id.* Moreover, *Brodheim* also reiterated that "a plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm." *Id.* at *6 (citing *Rhodes*, 408 F.3d at 568 n.11)

On the merits, it might well be that there was new or previously-undocumented evidence of possible gang affiliation. *See Bruce v. Ylst*, 351 F.3d 1283 1287-88 (9th Cir. 2003) (repeating a low-threshold "some evidence" standard for evaluating whether an inmate had gang-related ties for purposes of evaluating a due process claim). It might be true that there was a legitimate correctional interest in classifying Plaintiff as having suspected gang affiliations based on some new evidence by Defendants. Placement by a correctional official of gang-related information in an inmate's file done in response to a discovery that the file is wrong (e.g., that the file should have such information) might not be "retaliatory." Those types of inquiries, however, are not for decision at a motion-to-dismiss stage. The First Amended Complaint is allowed to stand.

## II.  Motion for Leave to File Supplemental Complaint

Plaintiff has filed a Motion for Leave to File a Supplemental Complaint. A (proposed) Second Amended Complaint has been filed and is docketed (doc. 24). Upon review of the proposed Second Amended Complaint, the Court DENIES the Motion for Leave to File Supplemental Complaint. The Second Amended Complaint at docket entry 24 is deemed struck (although it remains part of the record as a proposed Second Amended Complaint). The operative complaint is the First Amended Complaint at docket entry 12.

Plaintiff seeks to add both additional factual events mostly occurring after he filed the initial complaint in this action, as well as additional instances of "retaliation" by Defendants. Plaintiff seeks to add a claim that, *after* this civil action was filed, and *after* he was transferred from "B-facility" to "C-facility," Defendant Fields added information in Plaintiff's "C-facility" file indicating Plaintiff was a "Blood disruptive group associate." [doc. 12, at 9, ¶ 43]. He alleges that this was further retaliation and alleges that this placement of information

4

caused him to be locked down after two gang-related incidents in "C-facility." [*Id.* at ¶¶ 44, 46].

Plaintiff admits, however, that these incidents were not administratively exhausted before this action was filed. He alleges the matters were grieved, but only recently were the grievances completed.

The Court concludes that the incidents described in the proposed Second Amended Complaint are allegations of *distinct* retaliation. They would have occurred after a transfer or change in classification and location (i.e., from "B-facility" to "C-facility"). Construing the allegations broadly, given the timing the alleged retaliation could have been done in retaliation for filing the instant civil action. Even if the conduct alleged is similar to this suit, the allegations should be made (if at all) in a separate civil action. Most importantly, Plaintiff admits that administrative remedies had not been exhausted when this suit was filed. It would violate established Ninth Circuit precedent to allow an ongoing prisoner civil rights action to be amended to allege facts and causes-of-action only *after* they were exhausted. *See, e.g.*, *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (holding that a district court is required to dismiss an action without prejudice where the prisoner failed to exhaust administrative remedies prior to filing suit but was in the process of doing so).

The Motion for Leave to File a Supplemental Complaint is DENIED. The denial is without prejudice to Plaintiff filing a separate action limited to events occurring after January 2008 and after Plaintiff was transferred or reassigned to "C-Facility."

**CONCLUSION**

1. Defendants' Motion to Dismiss First Amended Complaint [21] is DENIED; and

2. Plaintiff's Motion for Leave to File Supplemental Complaint [25] is DENIED without prejudice to filing a new action regarding events occurring after January 2008.

IT IS SO ORDERED.

DATED: October 30, 2009.



_____
Samuel P. King
Senior United States District Judge