UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MICHAEL A. HUNT,

          Plaintiff,

  v.

M. REYES, et al.,

          Defendants.

No. 2:08-cv-00181-MCE-CKD

**MEMORANDUM AND ORDER**

Michael A. Hunt ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants Rios and Fields (collectively "Defendants") retaliated against him for exercising his First Amendment right to file grievances and pursue civil rights litigation. Presently before the Court are Plaintiff and Defendants' respective motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1]

The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

///

///

---

[1] All further references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

1

On August 21, 2012, the Magistrate Judge filed findings and recommendations, which were served on all parties and contained notice to all parties that any objections were to be filed within fourteen days.  (ECF NO. 83.)  Plaintiff objected to the findings and recommendations.  (ECF No. 84.)

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 304, this Court has conducted a de novo review of the case.  Having carefully reviewed the entire file, including objections, the Court adopts in full the Magistrate Judge's findings and recommendations as to Plaintiff's motion for summary judgment.  As to Defendants' motion for summary judgment, the Court respectfully rejects the Magistrate Judge's findings and recommendations as to Defendant Rios.  The Court adopts the findings and recommendations as to Defendant Fields but finds that further analysis is warranted.  Accordingly, Plaintiff's motion for summary judgment is denied, Defendant Rios' motion for summary judgment is denied, and Defendant Fields' motion for summary is granted.

**BACKGROUND**

Plaintiff does not object to the factual background presented in the findings and recommendations, but rather challenges the legal conclusions reached by the Magistrate Judge.  Thus, the Court adopts the following facts as established by the Magistrate Judge.  (See ECF No. 83 at 5-10.)

At all relevant times, Plaintiff was a state prisoner housed at California State Prison-Sacramento ("CSP-Sac").  Defendant Rios was a Correctional Sergeant assigned to B facility at CSP-Sac, and Defendant Fields was a Correctional Officer assigned to B facility.

In September 2002, prison officials partially granted an inmate appeal by Plaintiff challenging his listing as a member of the Blood disruptive group.

///
///

The First Level Reviewer reviewed Plaintiff's central file and "could not find any reference or documentation for [Plaintiff] being listed" as a member of the Bloods or any other disruptive group. Thus, the reviewer "directed staff to change [Plaintiff's] designation on all yard listings as being non-affiliated." (ECF No. 60 at 16.)

In March 2004, Plaintiff filed a federal civil rights action in the case Hunt v. McKay, No. 2:04-cv-0435 LKK JFM (E.D. Cal. 2004) ("McKay"), alleging that his due process rights were violated when correctional officer Vance improperly placed Plaintiff's name on a list of suspected gang members, associates, or sympathizers, causing Plaintiff to be locked down for twelve days.[2]

On December 19, 2006, Plaintiff declined to appear before the B Facility Unit Classification Committee ('UCC") for the purpose of annual review and program evaluation. The UCC noted that a December 1998 evaluation would "serve as the basis for [Plaintiff's] case factors," and opted to continue Plaintiff's present program. (ECF No. 60 at 22.) In the December 1998 evaluation, Plaintiff's gang affiliation was noted as "none." (Id. at 23.)

On December 25, 2006, a riot occurred on B facility at CSP-Sac involving thirty to forty inmates identified as being affiliated with the Bloods and Crips disruptive groups. Defendants assert that, after custody staff had controlled the riot, all inmates housed in B facility were put on lockdown status; Plaintiff asserts that "all Black inmates, including Plaintiff," were put on lockdown. On January 5, 2007, all non-affiliated inmates were returned to normal programming, while inmates affiliated with the Bloods and Crips disruptive groups remained on lockdown. Because Plaintiff's name appeared on the list of affiliated inmates, which identified him as a Blood associate, he remained on lockdown.

///

///

---

[2] On August 3, 2007, after the events giving rise to the instant action, summary judgment was granted for Defendant Vance. (McKay, ECF No. 93).

3

On January 6, 2007, Plaintiff submitted a grievance challenging his classification as a Blood affiliate. On January 17, 2007, all Blood and Crip affiliated inmates were permitted to return to normal programming, including Plaintiff.

On January 27, 2007, Defendant Rios interviewed Plaintiff regarding Plaintiff's January 6 grievance. During the interview, Plaintiff told Defendant Rios that he should not be listed as a Bloods affiliate, as he had no association with that group. Plaintiff told Defendant Rios that there was no evidence in his central file stating that he was an affiliate of the Bloods, and therefore he should be taken off the Bloods list. Plaintiff told Defendant Rios about the McKay lawsuit, which addressed similar gang validation issues and asked to see the evidence that was being used to identify him as a gang associate. Defendant Rios informed Plaintiff that this information was confidential and not available for Plaintiff to review.

Defendants assert that, prior to the January 27 interview, Defendant Rios reviewed Plaintiff's central file, which included some confidential chronos about Plaintiff's involvement with the Bloods disruptive group. These confidential chronos are reproduced as Defendants' Exhibit C. On July 9, 2012, this Court granted Defendants' motion to receive Defendants' Exhibits A and C under seal and for in camera review.

Defendants' Exhibit C consists of reports documenting confidential interviews with inmates dating from 2000, 2005 and 2007. In a January 2000 interview with a confidential informant considered credible, Plaintiff was identified as a leader in a Bloods-related Sacramento street gang. The report documenting the 2000 informant interview also described a 1998 confidential report in Plaintiff's file concerning weapon-related, and possibly gang-related, activity by Plaintiff. In a February 2000 interview, a confidential informant described Plaintiff as a drug dealer on the B facility yard. In a 2005 interview with two confidential informants deemed credible, Plaintiff was described as a respected affiliate of the Sacramento Bloods. In a 2007 interview with a confidential informant, Plaintiff was identified as a member of the Bloods disruptive group.[3]

---

[3] The Court understands Defendants to assert that, prior to his January 27, 2007, meeting with

4

Defendant Rios further declares that Plaintiff's cellmate at the time, inmate Fulham, was involved in the riot and deemed to be a victim. Fulham "is a documented Blood disruptive group associate" who had formerly been housed with Plaintiff, and was rehoused with him soon after the Christmas Day riot and two days before Plaintiff's interview with Defendant Rios. Defendant Rios declares that, to his knowledge, Plaintiff never requested a different cellmate during the period he was housed with Fulham. In deposition testimony, Plaintiff acknowledged that his cellmate had participated in the Christmas Day riot and was a "suspected Blood" who had told Plaintiff that he was a Blood.

**A. Defendants' Exhibit B: Alleged Retaliatory Chrono #1**

Defendants assert that the day before Defendant Rios met with Plaintiff, Defendant Rios observed Plaintiff participate in a meeting on the yard with known admitted members of the Crips, Bloods and Kumi disruptive groups. Defendant Rios declares that such meetings "often occur following problems or differences that lead to such incidents as the Christmas Day Riot, which involved several members of the Crip and Blood disruptive groups." In contrast, Plaintiff "vehemently den[ies] association with any Crip, Blood, and Bay Area (415 Kumi) disruptive groups as alleged by Rios[.]"

In its order dated July 9, 2012, the Court denied Defendants' motion to seal as to Defendants' Exhibit B, which has been served on Plaintiff. (ECF No. 90.) Exhibit B is a copy of a chrono authored by Rios on January 27, 2007.

Plaintiff contends that Defendant Rios placed the Exhibit B chrono in Plaintiff's file in retaliation for filing prison grievances and for the McKay litigation. Exhibit B states that Defendant Rios and yard staff saw Plaintiff participating in a large meeting held by known gang members from all the disruptive groups on January 26, 2007.

---

Plaintiff, Rios reviewed the confidential chronos in Defendants' Exhibit C dating from 2000 and 2005, as the 2007 interview had not yet occurred.

Exhibit B further states:

> On Saturday, 1-27-2007, while conducting an appeal 602 interview . . . with [Plaintiff], he described that the meeting he attended was everyone on the yard coming to an understanding that no one from any of the groups should be out on the yard drunk. [Plaintiff] claims he is a non-affiliated inmate and has been informed by me and other yard staff that his association with any validated/ self-admitted group member could be grounds to validate him as a disruptive gang member. A review of [Plaintiff's] central file reveals he has no information other than Confidential reports that implicate him as an associate of the Bloods disruptive group.

In his supplemental opposition to summary judgment addressing Exhibit B, Plaintiff again "denies that he participated in any large meeting with known gang members," and further denies "ever admitting to being a part of any meeting with those groups[.]"

Plaintiff asserts that after his January 2007 meeting with Defendant Rios, Defendant Rios "directed or ordered Defendant Fields, B Facility yard staff, to place documented evidence of Plaintiff's gang membership or gang activity in Plaintiff's central file" in retaliation for Plaintiff's protected First Amendment activities. In his declaration, Defendant Rios asserts: "The fact that [Plaintiff] had limited information in his central file regarding his gang association at that time, led me to recognize that my staff needed to document their observations of [Plaintiff's] gang activity." Thus, Defendant Rios "directed [his] staff to document all observed gang association and involvement by inmates, not just [Plaintiff]," for reasons of institutional safety and security.

**B. Defendants' Exhibit A: Alleged Retaliatory Chrono #2**

On February 16, 2007, Defendant Fields authored a chrono stating that she had observed Plaintiff associating with known Blood disruptive group members on February 14 and 21, 2007.[4]

---

[4] The Court assumes that the "February 21, 2007" date is erroneous, as Fields' chorno is dated five days earlier.

6

She further stated that she and B facility yard staff had been monitoring Plaintiff's activities for the past two years and had observed Plaintiff to mainly associate with inmates identified as Sacramento Bloods. "Whenever [Plaintiff] is present on the yard he is in the company of at least one inmate identified as a Blood associate," Defendant Fields stated. A copy of this chrono is submitted as Defendants' Exhibit A, ordered sealed by the Court on July 9, 2012.

It is Plaintiff's position that this chrono is both false and retaliatory in nature. He "vehemently den[ies] associating with any Blood gang members as alleged by Defendant Fields and most certainly den[ies] associating on the two dates as alleged because [Plaintiff] was actively pursuing civil rights litigation in court to prove [his] non-affiliated status, and did not go to the yard on those dates."

On April 17, 2007, while Plaintiff was reviewing his central file, he discovered a note indicating that Defendants Rios and Fields had placed chronos in his file concerning his suspected affiliation with disruptive groups. Two days later, Plaintiff filed an inmate appeal alleging that Defendants had placed gang information into his central file in retaliation for him submitting prison grievances and filing lawsuits. Defendants assert that accurate lists of inmates that are associated with disruptive groups are imperative to prison safety and security.

**STANDARDS**

**A. Standard under 28 U.S.C. § 636(b)(1)**

The Court must conduct a de novo review of portions of the magistrate judge's findings and recommendations to which a party objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); U.S. v. Remsing, 874 F.2d 614, 618 (9th Cir. 1989). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations" made by the magistrate judge. 28 U.S.C. § 636(b)(1).

"If neither party contests the magistrate's findings of fact, the court may assume their correctness and decide the motion on the applicable law." Remsing, 874 F.2d at 617.

**B. Standard under Rule 56**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying . . . the part of each claim or defense . . . on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Twp. of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

///

**ANALYSIS**

Plaintiff alleges that after he filed a grievance complaining about his listing as gang-affiliated on January 6, 2007, and that following his interview with Defendant Rios on January 27, 2007, about that grievance, Defendant Rios placed a retaliatory chrono in his file in violation of the First Amendment.  Plaintiff further alleges that in February 2007, as directed by Defendant Rios, Defendant Fields placed a retaliatory chrono in his file, also in violation of the First Amendment.  Both these chronos (Defendants' Exhibits B and A, respectively) describe Plaintiff's associations with members of the Bloods disruptive group.

The Magistrate Judge found that Plaintiff has not carried his burden of proving the absence of a legitimate correctional goal.  Accordingly, the Magistrate Judge recommended denying Plaintiff's Motion for Summary Judgment and recommended granting Defendants' Motions for Summary Judgment.  Plaintiff objects to the findings and recommendations on the grounds that the Magistrate Judge failed to take into account the Ninth Circuit's decision in Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003), and that a material issue of fact exists regarding Defendants' retaliatory intent.  (ECF No. 84 at 4.)  Defendants' motion for summary judgment also argues that Defendants are entitled to qualified immunity, which the findings and recommendations did not address.  The Court addresses each issue in turn.

**A. First Amendment Retaliation**

Retaliation by a state actor for the exercise of a constitutional right is actionable under § 1983 even if the act, when taken for different reasons, would have been proper. Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S 274, 283-84 (1977).  While the Constitution does not expressly refer to retaliation, it is actionable because retaliatory actions may chill the exercise of constitutional rights.

10

Perry v. Sindermann, 408 U.S. 593 (1972). Courts considering retaliation claims brought by prisoners must guard against "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)).

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). First, the prisoner must show that "the retaliated-against conduct is protected. The filing of an inmate grievance is protected conduct." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Robinson, 408 F.3d at 568). Second, the prisoner must show that a state actor took some adverse action against the prisoner. Id. (citing Robinson, 408 F.3d at 568). "The adverse action need not be an independent constitutional violation." Id. (citing Pratt, 65 F.3d at 806). Third, the prisoner must show causation; that is, that the adverse action was taken **because of** the prisoner's protected conduct. Id. (emphasis added). The timing and nature of the alleged retaliatory acts may evidence a retaliatory motive. See Pratt, 65 F.3d at 808; Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314-16 (9th Cir. 1989). However, mere allegations of a retaliatory motive will not defeat a summary judgment motion. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994). Fourth, the prisoner must show that Defendants' retaliatory actions "chilled the inmate's exercise of his First Amendment rights." Robinson, 408 F.3d at 567-68. A plaintiff who fails to allege a chilling effect may nonetheless succeed in his claim if he presents evidence that "he suffered some other harm," Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009), that is "more than minimal," Robinson, 408 F.3d at 568 n.11. Finally, the plaintiff must present evidence that the prison authorities' retaliatory "action did not reasonably advance a legitimate correctional goal." Id. at 567-68. The Ninth Circuit has held that "preserving institutional order, discipline, and security are legitimate penological goals that, if they provide the motivation for an official act taken, will defeat a claim of retaliation."

Barnett, 31 F.3d at 816; Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). When considering this final factor, courts should "afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (quoting Sandin, 515 U.S. at 482).

Thus, to obtain summary judgment on Plaintiff's retaliation claim, "Defendants have the burden to demonstrate that there are no genuine issues of fact supported by evidence as to at least one of the essential elements of a retaliation claim and, as a result, Plaintiff cannot prevail on the claim." Fields v. Velasco, No. 1:07-cv-01213, 2012 WL 3628862, at *3 (E.D. Cal. Aug. 21, 2012) (citing Celotex, 477 U.S. at 323). Defendants do not seriously contest that Plaintiff's conduct was protected, that placing the chronos in Plaintiff's file constitutes an adverse action, or that Plaintiff suffered some other, "more than minimal" harm. (See ECF No. 65-1 at 2.) Rather, both the parties and the findings and recommendations focus on the presence, or lack thereof, of legitimate correctional goals and, implicitly, causation.

**1. Legitimate Correctional Goals**

Here, "the burden is on Plaintiff to demonstrate that legitimate correctional purposes did not motivate the actions by prison officials about which he complains." Pratt, 65 F.3d at 806. In this case, it is undisputed that two chronos were placed in Plaintiff's file documenting his association with known Blood members. It is also undisputed that "gang validation procedures promote institutional security, perhaps the most legitimate of penological goals, by allowing CDCR to identify and neutralize gang affiliates . . . ." (ECF No. 84 at 4 (quoting Stewart v. Alameda, 418 F. Supp. 2d 1154, 1163 (N.D. Cal. 2006)).) Thus, Defendants have met their burden to show that no material facts are in dispute on this point.

///
///

However, because "prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right," the Court must examine whether evidence of a retaliatory motive exists. Bruce, 351 F.3d at 1299 (citing Cornell v. Woods, 69 F.3d 1383, 1388-89 (8th Cir. 1995); Woods v. Smith, 60 F.3d 1161, 1165 (5th Cir. 1995); Smith v. Maschner, 899 F.2d 940, 948-49 (10th Cir. 1990)).[5]

### 2. Causation

To show causation, Plaintiff must show that his "protected conduct" was the "substantial or motivating factor behind the Defendant[s'] conduct." Sorrano's, 874 F.2d 1310. Therefore, at the summary judgment stage, Plaintiff need only "put forth evidence of retaliatory motive, that taken in the light most favorable to him, presents a genuine issue of material fact as to intent." Brodheim, 584 F.3d at 1271 (citing Bruce, 351 F.3d at 1289). "When reviewing the causal connection between Defendants' actions and Plaintiff's protected activity, the Court draws all reasonable inferences in Plaintiff's favor. However, a causal connection will not be inferred from one statement, but from the cumulative circumstances." Fields, 2012 WL 3628862, at *5 (citing Curtis v. Buckley, 2011 WL 2551369 (E.D. Cal. June 27, 2011)). To determine Defendants' motivation, "the Court looks to Defendant[s'] knowledge of the protected activity, Defendant's conduct and statements, proximity in time between the protected activity and the adverse action, and the nature of the action." Id. at *5 (citing Soranno's, 874 F.2d at 1316).

///

---

[5] The Magistrate Judge found that "even if an inmate shows that the defendants' actions were retaliatory, the inmate's retaliation claim still fails unless he produces significant probative evidence demonstrating that the retaliatory action did not advance a legitimate penological goal." (ECF NO. 83 at 4.) Given the foregoing language in Bruce, the Court respectfully disagrees with the Magistrate Judge's conclusion of law as to this point.

13

Here, as to Defendant Rios, Defendants' evidence shows that Defendant Rios's meeting with Plaintiff and his review of Plaintiff's file demonstrated to him the lack of proper documentation in Plaintiff's file regarding Plaintiff's gang association. (ECF No. 65-3 at 3.) Defendant Rios attests that "[t]he fact that [Plaintiff] had limited information in his central file regarding his gang association at that time led me to recognize that my staff needed to document their observations of [Plaintiff's] gang activity." (Id.) However, Plaintiff offers his own sworn statement, in which he declares that during his January 27, 2002, meeting with Defendant Rios, Plaintiff "presented Defendant Rios with the District Court's order [in the McKay litigation], . . . where the Senior Judge criticized the Facility Captain Defendant's gang identification policy at CSP-[Sac]." (ECF No. 60-1 at 3.) Plaintiff declares that "[i]n response, Defendant Rios became further upset and hostile towards [Plaintiff] and stated, 'man fuck what that Judge says and I'll tell him to his face . . . . As long as I'm on this yard I'm going to keep you on the fuckin Blood list.'" (Id.) Plaintiff also states in his declaration that when he asked Defendant Rios to show him the evidence supporting Plaintiff's listing as a Blood associate, Defendant Rios "became further upset and hostile towards [Plaintiff] and stated 'you want some fuckin[g] evidence? I'll get you some fuckin[g] evidence.'" (Id. at 4.) It is undisputed that Defendant Rios placed a chrono in Plaintiff's file that same day, twenty-one days after Plaintiff filed his grievance. (See id. at 2, 4; ECF No. 65-3 at 4.)

Based on this evidence, and drawing all reasonable inferences in Plaintiff's favor, the Court cannot say that there is no genuine issue of material fact as to whether Defendant Rios had a retaliatory intent in placing the chrono in Plaintiff's file. Defendant Rios clearly had knowledge of Plaintiff's protected conduct, as he met with Plaintiff to discuss Plaintiff's grievance, and Plaintiff told Defendant Rios about his civil rights litigation during that meeting. See Fields, 2012 WL 3628862, at *5 (citing Soranno's, 874 F.2d at 1316). Likewise, Defendant Rios's conduct and statements, as set forth above, suggest a retaliatory motive when viewed in the light most favorable to Plaintiff.

Id. (citing Sorrano's, 874 F.2d at 1316).  Moreover, Rios's timing in filing the chrono — twenty-one days after Plaintiff filed his grievance, and the same day that Defendant Rios allegedly made statements showing his intent to retaliate against Plaintiff — suggests a retaliatory motive when viewed in the light most favorable to Plaintiff.  Id. (citing Sorrano's, 874 F.2d at 1316).  Because this evidence presents a genuine issue of material fact, the Court finds that summary judgment for Defendant Rios is not appropriate.  The Court therefore respectfully rejects the Magistrate Judge's findings and recommendations on this point.

As to Defendant Fields, Plaintiff has presented no evidence showing a retaliatory motive.  (See generally ECF No. 60-1.)  Rather, the evidence shows that Defendant Fields was merely instructed by Defendant Rios to document any gang-associative activity by Plaintiff.  (See ECF No. 60-1 at 5.)  Even if Defendant Rios's actions in filing the chrono and instructing Defendant Fields to document her observations were retaliatory, Defendant Rios's intent cannot be attributed to Defendant Fields.  The evidence, viewed in the light most favorable to Plaintiff, shows only that Defendant Fields filed the chrono in Plaintiff's file because she received instructions from Defendant Rios to document her observations.  (Id.)  Moreover, Defendant Fields did not file her chrono until February 16, 2007, more than a month after Plaintiff filed his grievance.  (Id. at 6.)  Although Plaintiff asserts that Defendant Fields filed the chrono "with a retaliatory intent," there are no facts before the Court to support this contention, and mere allegations of a retaliatory motive will not defeat a summary judgment motion.  See Barnett, 31 F.3d at 815-16.  The Court therefore adopts the Magistrate Judge's findings and recommendations on this point and finds that Defendant Fields' motion for summary judgment should be granted.

///
///
///
///

**B. Qualified Immunity**

Defendants also argue that they are entitled to qualified immunity. (ECF No. 65-1 at 2.) Generally, "government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Jeffers v. Gomez, 267 F.3d 896, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A two-part test is employed to determine whether a government officer is entitled to qualified immunity. See Saucier v. Katz, 533 U.S. 194, 201 (2001). The courts may use their discretion in deciding which of the two prongs to apply first in the case at hand. Pearson v. Callahan, 555 U.S. 223, 249 (2009). Defendants are entitled to qualified immunity if either prong is satisfied. Id.

The first prong requires that the Court consider whether the facts alleged, when viewed in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional light. Id. The second prong asks whether the right is "clearly established." Id. Summary judgment based on qualified immunity is appropriate if the law did not put the officer on notice that his conduct would be clearly unlawful. Id. at 202.

Here, there is a genuine issue of material fact as to whether Defendant Rios had a retaliatory motive when he placed the chrono in Plaintiff's file on January 27, 2007. See supra. Thus, when viewed in the light most favorable to the Plaintiff, the facts show that Defendant Rios violated Plaintiff's First Amendment rights. See Saucier, 533 U.S. at 201. "The prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes." Bruce, 351 F.3d at 1290 (quoting Pratt, 65 F.3d at 806). Accordingly, Defendant Rios is not entitled to qualified immunity. Because the Court adopts the Magistrate Judge's findings and recommendations as to Defendant Fields, Defendant Field's qualified immunity need not be addressed.

**CONCLUSION**

For the reasons set forth above, the Court ADOPTS IN FULL the Magistrate Judge's findings and recommendations as to Plaintiff's motion for summary judgment. (ECF No. 83.) Accordingly, Plaintiff's motion for summary judgment (ECF No. 60) is DENIED. As to Defendants' motion for summary judgment (ECF No. 65), the Court respectfully REJECTS the Magistrate Judge's findings and recommendations as to Defendant Rios, and ADOPTS the Magistrate Judge's findings and recommendations as to Defendant Fields. (ECF No. 83.) Accordingly, Defendant Rios's motion for summary judgment is DENIED and Defendant Fields' motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated:  September 28, 2012

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

17